Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001090
29-MAR-2019
08:30 AM

NO. CAAP-14-0001090

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
KEAKA MARTIN, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 13-1-0062)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Reifurth and Chan, JJ.)

Defendant-Appellant Keaka Martin (Martin) appeals from
the August 25, 2014 Judgment of Conviction and Sentence entered
by the Circuit Court of the Third Circuit (Circuit Court).[1]
After a jury trial, the Circuit Court convicted Martin of:
(1) Assault in the First Degree (Assault One) in violation of
Hawaii Revised Statutes (HRS) § 707-710[2] (2014) (Count 1);
(2) Carrying or Use of Firearm in the Commission of a Separate
Felony in violation of HRS § 134-21(a) (2011) (Counts 3 and 6);
(3) Attempted Murder in the First Degree (Attempted Murder One)
in violation of HRS § 705-500(1)(b)[3] (2014) and HRS § 707-701[4]

---

[1]     The Honorable Greg K. Nakamura presided.

[2]     HRS § 707-710 provides, in relevant part, "(1) A person commits
the offense of assault in the first degree if the person intentionally or
knowingly causes serious bodily injury to another person."

[3]     HRS § 705-500(1) provides, in relevant part:

        (1) A person is guilty of an attempt to commit a crime if
        the person:

                . . . .

(continued...)

(2014) (amended 2016) (Count 4); (4) Ownership or Possession Prohibited of Any Firearm or Ammunition by a Person Convicted of Certain Crimes in violation of § 134-7(b) and (h) (2011) (Count 7); (5) Carrying or Possessing a Loaded Firearm on a Public Highway in violation of HRS § 134-26(a) (2011) (Count 8); (6) Place to Keep Pistol or Revolver in violation of HRS § 134-25(a) (2011) (Count 9), and (7) Reckless Endangering in the Second Degree (RE Two) in violation of HRS § 707-714(1) (2014) (Count 11). Martin was sentenced to ten years with a mandatory minimum of ten years in Count 1, twenty years in Count 3, life imprisonment without the possibility of parole in Count 4, twenty years in Count 6, five years in Count 7, ten years in Count 8, ten years in Count 9, and one year in Count 11. Count 1 is to be served consecutively to the others, which are to be served concurrently with each other.

On appeal, Martin argues the Circuit Court erred by: (1) denying Martin's Motion to disqualify the trial judge for personal bias; (2) admitting testimony of prior bad acts without a limiting instruction; (3) denying Martin's motion to suppress evidence of his suicide attempt and custodial statements; (4) engaging Martin in a deficient Tachibana colloquy; (5) failing to properly instruct the jury on lesser included offenses; (6) denying his motion for judgment of acquittal or new trial where the jury rendered an impermissibly inconsistent verdict; (7) denying his motion for judgment of acquittal where there was insufficient evidence to support the Attempted Murder

---

[3] (...continued)
    (b)    Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

[4]    HRS § 707-701 provides, in relevant part, "(1) A person commits the offense of murder in the first degree if the person intentionally or knowingly causes the death of: . . . (b) A law enforcement officer, judge, or prosecutor arising out of the performance of official duties[.]

One count; and (8) imposing consecutive sentences. Martin also argues he received ineffective assistance of trial counsel.[5]

After a careful review and consideration of the parties' arguments, the record on appeal, and relevant legal authorities, we resolve Martin's points on appeal as follows and affirm his conviction.

1.   The Circuit Court did not abuse its discretion by denying Martin's motion to disqualify the trial judge for personal bias. Decisions on recusal or disqualification are reviewed for abuse of discretion. State v. Ross, 89 Hawai'i 371, 375, 974 P.2d 11, 15 (1998). "Hawai'i courts apply a two-part analysis in disqualification or recusal cases." Chen v. Hoeflinger, 127 Hawai'i 346, 361, 279 P.3d 11, 26 (App. 2012). First, courts determine whether HRS § 601-7(a) (2016)[6] requires disqualification because of bias covered by the statute. Id. Second, where the statute does not apply, courts consider whether due process requires the judge's recusal because circumstances fairly give rise to an appearance of impropriety and reasonably cast suspicion on the judge's impartiality. Id.; see also Revised Code of Judicial Conduct (RCJC) Rule 2.11(a)(1).[7]

---

[5]    Martin's points of error have been reordered chronologically and restyled for clarity.

[6]    HRS § 601-7(a) provides:

(a)  No person shall sit as a judge in any case in which:

  (1)   The judge's relative by affinity or
        consanguinity within the third degree is
        counsel, or interested either as a plaintiff or
        defendant, or in the issue of which the judge
        has, either directly or through such relative, a
        more than de minimis pecuniary interest; or

  (2)   The judge has been of counsel or on an appeal
        from any decision or judgment rendered by the
        judge;

provided that no interest held by mutual or common funds,
the investment or divestment of which are not subject to the
direction of the judge, shall be considered pecuniary
interest for purposes of this section; and after full
disclosure on the record, parties may waive disqualification
due to any pecuniary interest.

[7]    RCJC Rule 2.11(a)(1) provides:

    (a)  Subject to the rule of necessity, a judge shall
disqualify or recuse himself or herself in any proceeding in
(continued...)

Martin argues that the Circuit Court erred by failing to disqualify or recuse itself for personal bias where the trial judge gave a five-dollar contribution to an informal fund to assist a judiciary employee, a complaining witness's wife, who would be on leave to care for her husband. First, this alleged bias does not fall into any of the statutory categories contained within HRS § 601-7(a).

Second, the circumstances do not reasonably cast suspicion on the judge's impartiality. The dollar amount was nominal. The contribution was made more than a month before Martin was indicted or the trial judge was assigned. Moreover, the contribution was solicited by email sent to a large number of judiciary employees, including other judges in the circuit, and payment was made through the judge's clerk to a judiciary employee collecting for the fund. The judge disclosed the

---

[7](...continued)
> which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

>> (1) The judge has a personal bias or prejudice for or against a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

"Impartiality" is defined as the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that come or may come before a judge." RCJC Terminology. "De minimis" for the purposes of Rule 2.11, "means an insignificant interest that could not raise a reasonable question regarding the judge's impartiality." Id.

Commentary to RCJC Rule 2.11(a) notes,

> [1] Under Rule 2.11(a), a judge is disqualified or recused whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific provisions of Rules 2.11(a)(1) through (6) apply.

> . . . .

> [3] As provided for in Rule 2.11(a), the rule of necessity may override the rule of disqualification or recusal. For example, a judge might be required to participate in judicial review of a judicial salary statute, or might be the only judge available in a matter requiring immediate judicial action, such as a hearing on probable cause or a temporary restraining order. In matters that require immediate action, the judge must disclose on the record the basis for possible disqualification or recusal and make reasonable efforts to transfer the matter to another judge as soon as practicable.

contribution after he realized the employee he made the contribution to was a complaining witness's wife, represented that, although he was acquainted with her, he did not know her last name until he saw a document associated with this case, and did not discuss this case with her.

Federal courts have held that a casual acquaintance with a victim—let alone a victim's family member—does not require recusal. See United States v. Sundrud, 397 F. Supp. 2d 1230, 1233 (C.D. Cal. 2005) ("Generally, judges are not required to recuse when they have a casual relationship with a victim, attorney, witness, or litigant[.]"); Sewer Alert Comm. v. Pierce Cty., 791 F.2d 796, 798 (9th Cir. 1986) (permitting a judge to sit on a case despite a friendship with one of the parties); Clemens v. U.S. Dist. Court for the Cent. Dist. of Cal., 428 F.3d 1175, 1180 (9th Cir. 2005) ("[M]andatory disqualification . . . is not warranted simply because of a professional relationship with a victim[.]"). Therefore, the trial judge's donation of a nominal amount without more does not present an appearance of impropriety nor cast suspicion on the trial judge's impartiality.

2. Martin asserts that five witnesses provided impermissible character evidence in violation of Hawaii Rules of Evidence (HRE) Rule 404.[8] Under HRE Rule 404(b), "bad act" evidence is admissible when: (1) it is relevant to any fact of

---

[8]     Rule 404 provides, in relevant part:

**Character evidence not admissible to prove conduct; exceptions; other crimes.** (a) Character evidence generally. Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. . . .

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

consequence other than to show action in conformity therewith; and (2) its probative value is not substantially outweighed by the danger of unfair prejudice pursuant to HRE Rule 403. See State v. Renon, 73 Haw. 23, 31-32, 828 P.2d 1266, 1270 (1992). The challenged testimony is of two types: describing the night of the shootings, and prior acts and statements by Martin.

Martin did not object to testimony regarding his statements and acts on the night of the shooting as impermissible character evidence; therefore, our review is for plain error. See HRS § 641-16 (2016);[9] Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.") and HRE Rule 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.").

Martin asserts the testimony was brought forth only to prove bad character. On appeal, Martin objects to the admission of combined testimony that he: (1) had outstanding warrants and was facing jail time; (2) did not want to be imprisoned; (3) would not submit to the police without a fight; (4) said "fuck the cops" to two different witnesses; and (5) fired his gun in the air repeatedly to punctuate saying "fuck the cops." Any purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove

---

[9]     HRS § 641-16(c) provides in pertinent part,

Except as otherwise provided by the rules of court, there shall be no reversal for any alleged error in the admission or rejection of evidence or the giving of or refusing to give an instruction to the jury unless such alleged error was made the subject of an objection noted at the time it was committed or brought to the attention of the court in another appropriate manner.

Similarly, HRE Rule 103 states, in this regard,

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

    (1)    Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]

character. See State v. Fetelee, 117 Hawai'i 53, 82 n.26, 175 P.3d 709, 738 n.26 (2008). Here, the evidence was properly offered to prove motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See id. at 82, 175 P.3d at 738; HRPP Rule 404(b). Therefore, the evidence was not produced to demonstrate bad character. Martin does not challenge the court's HRE Rule 403 balancing on appeal. Thus, the Circuit Court did not plainly err by admitting this testimony.

Martin also objects to intermittent girlfriend Misty Quiocho's (Quiocho) testimony that he was aware of a warrant for his arrest. Martin asserts he preserved the error by objecting to the State raising the issue of a warrant. However, his objection was to exceeding the scope of direct examination and not to presenting a prior bad act. Therefore, we will review this for plain error as well. See HRPP Rule 52(b). Martin asserts the testimony was brought forth only to prove bad character. Quiocho testified Martin avoided the police because, "He had a warrant." As with the evidence of a warrant previously discussed, this testimony was relevant to the permissible purposes of motive or intent, *inter alia*. See HRPP Rule 404(b). Therefore, the evidence was not admitted solely to prove bad character. Martin does not challenge the court's HRE Rule 403 balancing. Thus, the Circuit Court did not plainly err by admitting this testimony.

Martin further objects to former girlfriend Sonya Chong's (Chong) testimony regarding his actions and statements some six month prior to the shootings. Martin properly preserved this issue for appeal. Chong testified Martin had a silver and grey handgun, practiced aiming into the bush, and indicated he would shoot cops while saying "fuck the cops." On appeal, we review the trial court's relevance determination *de novo*. State v. Richie, 88 Hawai'i 19, 36-37, 960 P.2d 1227, 1244-45 (1998). The State proffered the evidence as relevant to Martin's state of mind, intent, and opportunity to commit the crime. We agree. We also note its relevance to prove preparation, plan, knowledge, identity, or absence of mistake or accident. See HRPP

Rule 404(b). Thus, the Circuit Court's relevancy determination was correct.

On appeal, we review the trial court's HRPP Rule 403 balancing for abuse of discretion. Richie, 88 Hawai'i at 38, 960 P.2d at 1245-46. When weighing probative value versus prejudicial effect in the context of HRE 403, a court must consider a variety of factors, including:

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

State v. Behrendt, 124 Hawai'i 90, 106, 237 P.3d 1156, 1172 (2010) (citation omitted). The Circuit Court emphasized the great need for the evidence and the lack of alternative proof because Chong's testimony describing Martin's prior statement of intent was the only evidence of his state of mind. The Hawai'i Supreme Court has held where there is "high relevance and strong need, the rule 403 balance will always favor admissibility." Id. (quoting Addison M. Bowman, Hawaii Rules of Evidence Manual § 404-3[2][B] (2008-2009 ed.)). Moreover, Chong's testimony was strong because it was undisputed that the charged conduct and the testimony were factually similar, six months is not particularly remote in time, and the testimony was unlikely to rouse the jury to overmastering hostility. See State v. Acker, 133 Hawai'i 253, 277-78, 327 P.3d 931, 955-56 (2014) (undisputed witness testimony is strong). Compare State v. Clark, 83 Hawai'i 289, 303, 926 P.2d 194, 208 (1996) (domestic violence reports filed 120 days prior, admissible) with State v. Asuncion, 110 Hawai'i 154, 167, 129 P.3d 1182, 1195 (App. 2006) (domestic violence reports filed over the course of six years prior, admissible). Thus, the Circuit Court did not abuse its discretion by admitting Chong's testimony.

Martin further asserts that, even if admissible, the court was required to offer a limiting instruction for all challenged testimony. Martin did not request a limiting instruction. Generally under HRE Rule 105, courts are only required to give a limiting instruction "upon request." State v.

Munson, 128 Hawai'i 497, 291 P.3d 395, No. 30495, 2012 WL 5677857 at *5 (App. Nov. 15, 2012) (mem.) (quoting HRE Rule 105 and deciding no limiting instruction for HRE Rule 404(b) evidence was necessary absent a request). Further, the decision not to request a limiting instruction is a matter of legitimate trial strategy. Id. Thus, the Circuit Court did not plainly err by admitting this evidence without a limiting instruction.

3. The Circuit Court did not abuse its discretion in denying Martin's motion to suppress his suicide attempt or his custodial statement. Martin claims evidence of his attempted suicide was irrelevant because of its equivocal nature and as impermissible character evidence in violation of HRE Rule 404.[10] An appellate court reviews the lower court's ruling on a motion to suppress de novo. State v. Kauhi, 86 Hawai'i 195, 197, 948 P.2d 1036, 1038 (1997). HRE Rule 404(b) evidence is admissible when the evidence is: (1) relevant to any fact other than character; and (2) its probative value is not substantially outweighed by the danger of unfair prejudice. Renon, 73 Haw. at 31-32, 828 P.2d at 1270.

Relevance of HRE Rule 404(b) evidence is reviewed de novo. Richie, 88 Hawai'i at 36-37, 960 P.2d at 1244-45. Numerous other courts, as the Circuit Court here, have held evidence of a suicide attempt by the accused is relevant as evidence of consciousness of guilt or attempted flight from justice. See, e.g., Walker v. State, 483 So.2d 791, 796 (Fla. Dist. Ct. App. 1986) (jury may consider criminal suspect's attempted suicide as an indication of a desire to evade prosecution); State v. Mitchell, 450 N.W.2d 828, 830, 832 (Iowa 1990) (a suicide attempt in the back of a police car considered evidence admissible to show consciousness of guilt); State v. Campbell, 405 P.2d 978, 985 (Mont. 1965) (jury may consider evidence of an attempted suicide by defendant as tending to prove consciousness of guilt).

---

[10] Initially, we note that it is not clear whether a suicide attempt is properly reviewed under HRE Rule 404. See State v. Stanley, 37 P.3d 85, 92 (N.M. 2001) (suicide attempts are not subject to bad character analysis because they stem from mental illness, not character). We assume, without deciding, that a suicide attempt is subject to an HRE Rule 404 analysis for the purposes of this decision.

9

The evidence presented supported the Circuit Court's ruling that Miller's suicide attempt was consistent with consciousness of guilt. Kawika Paulino (Paulino) testified Martin said Martin knew he was subject to arrest on an outstanding warrant, was facing jail time, and did not want to go to jail. Jair Trail (Trail) testified Martin said, "I'd rather die than go to jail" and that, the day after the shooting, Martin shot himself after he knew police were outside, calling for him.

On appeal, we review the trial court's HRPP Rule 403 balancing for abuse of discretion. Richie, 88 Hawai'i at 37-38, 960 P.2d at 1245-46. "This balance is predicated upon an assessment of the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence will probably rouse the jury to overmastering hostility." State v. Uyesugi, 100 Hawai'i 442, 463, 60 P.3d 843, 864 (2002) (citation and internal quotation marks omitted). There was a need for the evidence of a suicide attempt as motive evidence because it expressed Martin's fervor to avoid imprisonment in a way that the alternative proof, Paulino or Trail's testimony, could not. Further, Martin gives no reasons why evidence of a suicide attempt would rouse the jury to overmastering hostility. Admission of evidence of Martin's attempted suicide was not an abuse of discretion.

Martin also challenges the voluntariness of his statement, "I shot myself." The test whether "'interrogation' has taken place is whether the police officer 'should have known that his [or her] words and actions were reasonably likely to elicit an incriminating response from the defendant.'" State v. Kanzanas, 138 Hawai'i 23, 38, 375 P.3d 1261, 1276 (2016) (citation omitted). Martin responded to an armed SWAT officer's commands to "show me his hands" or "roll over" by twice stating, "I shot myself." Under these circumstances it is clear that Martin was in custody, but it is equally clear that he was not subject to interrogation. The Circuit Court did not err in determining that Martin's statement was voluntary and therefore admissible.

Martin again asserts that he was entitled to a limiting instruction not requested at trial. For the reasons given above, we find this argument without merit. See supra.

4.    The Circuit Court did not violate Martin's constitutional right to testify by failing to conduct a proper Tachibana[11] colloquy. Martin did not testify at trial. Martin does not dispute that the Circuit Court covered all the aspects of the right to testify and the right not to testify, nor does he point to any indication in the record that he did not understand his rights as the Circuit Court explained them. Martin instead argues that the Circuit Court's ultimate Tachibana colloquy was deficient because it failed to engage in a "true colloquy" and instead merely recited a litany of rights.

The appellate courts will look to the totality of the facts and circumstances of each particular case to determine whether the waiver of the right to testify was voluntarily and intelligently undertaken. State v. Celestine, 142 Hawai'i 165, 171, 415 P.3d 907, 913 (2018). As Martin does not dispute that the Circuit Court fully informed Martin of the five principles pertaining to his right to, and not to testify, the Circuit Court satisfied the "first component" of this process. Id. at 170, 415 P.3d at 912.

As to the second colloquy component, in preparation therefor, the Circuit Court ensured that Martin was thinking clearly, and was not sick, medicated, or intoxicated. When Martin indicated he was taking pain medication, the Circuit Court specifically inquired whether Martin was able to think clearly despite the pain and the medication. After the Circuit Court informed Martin of his rights to and not to testify, it then asked Martin if he understood what he was told, to which Martin responded affirmatively.[12] After noting its understanding that

---

[11]    Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995).

[12]    This is consistent with Martin's response to the Circuit Court's pre-trial advisement where, consistent with State v. Lewis, 94 Hawai'i 292, 297, 12 P.3d 1233, 1238 (2000), all five aspects of Martin's testimonial rights were read and Martin affirmed he had no questions about these rights and understood them. Like Martin's responses to the Lewis advisement, Martin's responses to the Tachibana advisory reflected no uncertainty or lack
(continued...)

Martin had chosen not to testify, the Circuit Court asked Martin specifically, "[a]nd is it your decision not to testify?" to which Martin again answered affirmatively. The Circuit Court went further to ask counsel individually if they had any other questions to ask, and both answered, "no," thus indicating that the attorneys in the room saw no need to question Martin further.

Martin argues that because the Circuit Court "did not inquire if [Martin] understood specifically each of the rights he was giving up the colloquy was insufficient." We disagree. After stating the fundamental principles of his rights, the Circuit Court asked Martin if he understood, and Martin answered, "Yes." To the extent Martin is arguing that the court is required to stop and ask a defendant about each component of his rights, he cites no authority for that proposition and we find none. Taking the Circuit Court's questions and Martin's answers in context, we conclude that the colloquy was adequate to determine Martin's knowing, intelligent, and voluntary waiver of his right to testify.

Finally, Martin further asserts his "impaired mental faculties were at issue[.]" Essentially, Martin argues his suicide attempts, competency hearing, and the grant of extreme mental or emotional disturbance instructions required additional effort to ensure that he understood his Tachibana rights. Under these circumstances, we disagree. Martin was deemed competent and fit to proceed to trial after all three examiners independently deemed him capable of understanding the proceedings. Further, two examiners noted his alert and cooperative manner and that he could interact rationally. The Circuit Court had the opportunity to observe Martin's demeanor and behavior during his fitness hearing testimony as well as during the lengthy trial. Martin points to nothing in the record indicating mental faculties impaired his ability to understand the substance of his exchange with the court or that should have alerted the Circuit Court that additional inquiry was indicated.

---

[12](...continued)
of understanding. See State v. Sado, 141 Hawai'i 129, 405 P.3d 565, CAAP-15-0000201, 2017 WL 4957445 at *1 (App. Oct. 31, 2017) (SDO), cert. rejected, 2018 WL 2016152 (Apr. 30, 2018).

Taking all the circumstances into consideration, we conclude that the on-the-record waiver of Martin's right to testify was valid.

5. Martin claims the Circuit Court erred by failing to *sua sponte* instruct the jury as to lesser included offenses in Counts 1 and 4. Under HRS § 701-109(4)(a) (2014), "[a]n offense is so included when . . . [i]t is established by proof of the same or <u>less than</u> all the facts required to establish the commission of the offense charged." (Emphasis added.) "[P]roviding instructions on all lesser-included offenses with a rational basis in the evidence is essential to the performance of the jury's function." <u>State v. Flores</u>, 131 Hawai'i 43, 51, 314 P.3d 120, 128 (2013). The test for giving a lesser-included offense instruction focuses on whether under "any view of the evidence[,]" there is "a rational basis for the jury to acquit [of the charged offense] and, alternatively, to convict [] of [the lesser-included offense.]" <u>Flores</u>, 131 Hawai'i at 53, 314 P.3d at 130.

With respect to Counts 1 and 4, each charged as Attempted Murder One, the Circuit Court instructed the jury on numerous lesser included offenses.[13] On appeal, Martin asserts the court should have instructed the jury as to Assault in the Third Degree (Assault Three), in violation of HRS § 707-712 (2014), and RE Two in both counts.

First, with respect to an Assault Three instruction, AALEO One and Assault Three have the same essential elements except that AALEO One requires the additional attendant circumstance that the injured person is "a law enforcement officer who is engaged in the performance of duty." <u>Compare</u> HRS § 707-712 <u>with</u> HRS § 707-712.5. At trial, no evidence of any kind was introduced to suggest Officers Garrett Hatada (Officer

---

[13] In Count 1, the Circuit Court instructed on the lesser included offenses of: Attempted Murder in the Second Degree, in violation of HRS § 707-701.5 (2014); Attempted Manslaughter, in violation of HRS § 707-702 (2014); Assault One; Assault in the Second Degree based on intentionally or knowingly causing substantial bodily injury or recklessly causing serious bodily under HRS § 707-711(1)(a) or (b) (2014) (Assault Two); Assault Against a Law Enforcement Officer in the First Degree (AALEO One), in violation of HRS § 707-712.5 (2014); and Reckless Endangering in the First Degree (RE One), in violation of HRS § 707-713 (2014). In Count 4, the court instructed in all the above lesser included offenses and instructed the jury as to Attempted Assault One and Attempted Assault Against LEO.

Hatada) and Joshua Gouveia (Officer Gouveia) were not law enforcement officers engaged in the performance of their duties. Thus, there was no rational basis in the evidence to require the court to instruct the jury on Assault Three as opposed to AALEO One.

Second, both RE One and RE Two have been held to be lesser included offenses of attempted murder. See State v. Rumbawa, 94 Hawai'i 513, 517-21, 17 P.3d 862, 866-70 (App. 2001) (citing State v. Feliciano, 62 Haw. 637, 618 P.2d 306 (1980)). Thus, the Circuit Court's failure to instruct the jury as to RE Two was error. The State contends any error was harmless beyond a reasonable doubt. We agree. In State v. Magbulos, this court held "the failure to instruct on a lesser included offense two levels below the offense for which the defendant is found guilty will ordinarily be harmless." 141 Hawai'i 483, 499, 413 P.3d 387, 403 (App. 2018) (discussing Flores, 131 Hawai'i at 56, 314 P.3d at 133; State v. Kaeo, 132 Hawai'i 451, 323 P.3d 95 (2014)); see also State v. Arruda, 138 Hawai'i 51, 375 P.3d 1289, CAAP-13-0001412, 2016 WL 2941086 at *15 (App. May 4, 2016) (mem.) (noting Flores did not hold failing to instruct on lesser included offenses was always harmful). In that case, a jury instructed on a range of lesser included offenses found Magbulos guilty as charged. Id. Here, a jury instructed on a wide range of lesser included offenses found Martin guilty of Assault One and Attempted Murder One. These offenses are both at least five levels higher than RE Two. We cannot plausibly believe had the jury been instructed of the lower-level offense it might reasonably have found Martin guilty of RE Two. See id. Therefore, we conclude the failure to instruct on RE Two was harmless beyond a reasonable doubt.

Martin also asserts the Circuit Court should have instructed the jury on Attempted Assault One, Attempted Assault Two, and Attempted AALEO One in Count 1. Martin broadly claims there should have been parity between the lesser included offenses for each count. We disagree. As Martin argued at trial, there was a rational basis in the evidence that Officer Gouveia's injury was caused by one of the two shots fired by

14

Officer Hatada. Moreover, a bullet matched to Martin's weapon was lodged in the vehicle behind Officer Gouveia, thus supporting an attempt. There was no such evidence of other shots fired in Officer Hatada's direction to warrant an attempt instruction. Therefore, the Circuit Court's omission of attempt instructions on Count 1 was not error.

6. The Circuit Court did not abuse its discretion by denying Martin's motion for judgment of acquittal or new trial because the jury rendered an impermissibly inconsistent verdict. Martin asserts a conflict in the jury's return of Assault One in Count 1 and Attempted Murder One in Count 4. The circumstances in this case are unlike those in People v. Spears, 493 N.E.2d 1030, 1034 (Ill. 1986) and Territory v. Thompson, 26 Haw. 181, 184 (Terr. 1921), the cases that Martin cites. In Spears, the Illinois Supreme Court rejected the State's portrayal of three shots in a salvo as sufficient to support guilty verdicts for charged and two lesser included offenses separated by states of mind. 493 N.E.2d at 1034. In Thompson, one defendant was found guilty although the others were exonerated for precisely the same conduct. 26 Haw. at 182. Here, in Count 4, Officer Gouveia was shot in the left hip at close range while yelling, "Let me see your hands. Let me see your hands. Don't do it. Gun."[14] Further, a bullet matching Martin's gun was found lodged in the vehicle behind Officer Gouveia, indicating two shots were fired in his direction. By contrast, in Count 1, Officer Hatada was shot through the foot and calf while turning to run from the van. The different injuries and circumstances support the conclusion that Martin had a different intent in inflicting each injury and justify different verdicts. See State v. Stocker, 90 Hawai'i 85, 92, 976 P.2d 399, 406 (1999) ("the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn

---

[14] While there were different versions of the events presented, the most plausible story that matched the physical evidence is that Martin: (1) shot Officer Gouveia in the hip; (2) took a second shot at Officer Gouveia that missed, instead hitting the truck and lodging in the glove box; and (3) switched aim and fired at Officer Hatada hitting his right foot mid-stride and continuing through his left calf. Officer Hatada then ran several steps to turn and fired two rounds, one that lodged in the tire and the other that ricocheted off the van's driver's side door.

NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

from all the circumstances.") (citation and internal quotation marks omitted).

7.   The Circuit Court did not err in denying Martin's motion for judgment of acquittal as, taking the evidence in the light most favorable to the prosecution, State v. Timoteo, 87 Hawai'i 108, 112-13, 952 P.2d 865, 869-70 (1997), there was substantial evidence to support the Attempted Murder One count.

Based on the statutory elements of the offense of Attempted Murder One, the State was required to establish beyond a reasonable doubt that Martin intentionally engaged in conduct which, under the circumstances as Martin believed them to be, constituted a substantial step in a course of conduct intended or known by Martin to cause the death of Officer Gouveia, a law enforcement officer, arising out of the performance of official duties. See HRS §§ 705-500 and 707-701.

At trial, Officer Gouveia testified that he announced himself as a police officer, kneeled down to speak to a man under a van, the man pulled a firearm from his waistband, pointed it at the officer from one foot away, and fired the weapon hitting the officer in left hip area. Physical evidence indicated the man took a second shot in the officer's vicinity. Witnesses at the scene identified Martin as hiding under the van, and testified to his holding a firearm immediately after the shooting. The next day, Martin was apprehended in possession of the firearm matched to a bullet recovered from the scene of the shooting.

Based on the testimony of the State's witnesses and the physical evidence and viewing all inferences in light most favorable to the State, there was sufficient evidence to support Martin's conviction for Attempted Murder One.

8.   Martin argues that the Circuit Court abused its discretion by sentencing him to consecutive terms of imprisonment between the Assault One count and the other counts. Martin argues that the Circuit Court sentenced him to consecutive sentences solely for the extraneous purpose of extending the period of time he would serve if the Governor commuted his life sentence. See State v. Gaylord, 78 Hawai'i 127, 150, 890 P.2d 1167, 1190 (1995) (imposition of consecutive terms for solely

16

extraneous reasons is abuse of discretion). We disagree. Even assuming this is an extraneous purpose, the Circuit Court expressly considered several HRS § 706-606[15] (2014) factors and concluded that, absent a concurrent sentence in Count 1 there would be a lack of punishment or deterrence for such a serious crime with a separate victim. Thus, the Circuit Court followed the command of HRS § 706-668.5(2) (2014) (amended 2015) by considering the factors set forth in HRS § 706-606. See Gaylord, 78 Hawai'i at 150, 890 P.2d at 1190. Based on the court's express reasoning, it cannot be said the court imposed consecutive terms solely for an extraneous reason. Thus, the Circuit Court did not abuse its discretion by imposing consecutive sentences between the Assault One count and the other counts.

9. Martin claims that he received ineffective assistance of counsel based on the omissions set forth in his points of error. The burden of establishing ineffective assistance of counsel rests with the defendant and can only be met by demonstrating that: (1) there were specific errors or omissions reflecting counsel's lack of skill, judgment, or

---

[15] HRS § 706-606 requires that the sentencing court consider the following factors in determining the particular sentence to be imposed:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed:

  (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;

  (b) To afford adequate deterrence to criminal conduct;

  (c) To protect the public from further crimes of the defendant; and

  (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

diligence; and (2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. See e.g., Richie, 88 Hawai'i at 39, 960 P.2d at 1247. Having rejected Martin's points of error on the merits, they cannot serve as a basis to find trial counsel ineffective.

For the foregoing reasons, the August 5, 2014 Judgment of Conviction and Sentence entered by the Circuit Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawai'i, March 29, 2019.

Lars Robert Isaacson,
for Defendant-Appellant.

Ricky R. Damerville
Deputy Prosecuting Attorney,
(Garrett T. Maruyama
Deputy Prosecuting Attorney,
with him on the briefs)
County of Hawai'i,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

18